UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the matter of the Complaint of HORNBLOWER FLEET, LLC owner, and HORNBLOWER YACHTS, LLC dba HORNBLOWER CRUISES AND EVENTS, owner pro hac vice for exoneration of, or limitation of, liability, Plaintiffs, and Related Claims. | Case No.: 16CV2468 JM-LL<br><br>**ORDER GRANTING IN PART CLAIMANTS' MOTION FOR SANCTIONS FOR SPOLIATION OF TANGIBLE PHYSICAL EVIDENCE**<br><br>**[ECF No. 178]** |

Currently before the Court is Claimants Ana Helvie and Kyle Helvie's ("Helvie Claimants") Motion for Sanctions for Spoliation of Tangible Physical Evidence [ECF No. 178 ("Mot.")], Plaintiffs Hornblower Fleet, LLC and Hornblower Yachts, LLC's Opposition to Claimants' Motion [ECF No. 182 ("Opp.")], and the Helvie Claimants' Reply [ECF No. 187 ("Reply")]. Claimant Susan Pendergast and Third-Party Defendants Globe Motors, Inc. and Twin Disc, Inc., have each filed joinders to the Motion for Sanctions. ECF Nos. 190, 191 and 192.

For the reasons set forth below, the Court **GRANTS IN PART** the Helvie Claimant's Motion for Sanctions for Spoliation of Tangible Physical Evidence.

## RELEVANT DISCOVERY BACKGROUND

On November 5, 2018, counsel for all parties[1] in the instant action contacted the Court regarding the Helvie Claimants' request to file a Motion for Sanctions for Spoliation of Tangible Physical Evidence. ECF No. 177. On November 6, 2018, the Court issued a briefing schedule. Id. In accordance with this schedule, the Helvie Claimants and Plaintiffs timely filed a motion, opposition, and reply. See ECF Nos. 178, 182, and 187.

On December 3, 2018, after the Helvie Claimants' Motion for Sanctions was fully briefed, counsel for all parties[2] contacted the Court again, this time regarding Claimant Pendergast and Third-Party Defendants Twin Disc and Globe Motors's request to: (1) file joinders to the Helvie Claimants' Motion for Sanctions and (2) file a separate motion for terminating sanctions based on the same facts and discovery violations already raised in the Helvie Claimants' Motion for Sanctions. ECF No. 189.

On December 4, 2018, the Court denied Claimant Pendergast and Third-Party Defendants Twin Disc and Globe Motors's request to file a separate motion as untimely, but granted their request to file joinders. Id. In response, Claimant Pendergast and Third-Party Defendants Twin Disc and Globe Motors timely filed joinders to the Helvie Claimants' Motion for Sanctions. ECF Nos. 190, 191 and 192. On December 10, 2018, the Court granted Claimant Pendergast and Third Party Defendants Twin Disc and Globe Motors's motions for joinder. ECF No. 193.

///
///

---

[1] Mitchell Griffin and Richard Wootton appeared on behalf of Plaintiffs. Dennis Sullivan, Stuart Frankel, and Carlos Llinas appeared on behalf of the Helvie Claimants. Frank Clowney appeared on behalf of Claimant Pendergast. Karina Lobeto appeared on behalf of Defendant Twin Disc. Scott Loeding appeared on behalf of Defendant Globe Motors.

[2] Mitchell Griffin and Richard Wootton appeared on behalf of Plaintiffs. Dennis Sullivan and Carlos Llinas Negret appeared on behalf of the Helvie Claimants. Frank Clowney and Rory Pendergast appeared on behalf of Claimant Pendergast. Dan Kennedy and Steven Nelson appeared on behalf of Defendant Twin Disc. William Snyder appeared on behalf of Defendant Globe Motors.

## **LEGAL STANDARD**

Spoliation is the destruction or significant alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. See United States v. Kitsap Physicians Svs., 314 F.3d 995, 1001 (9th Cir. 2002) (citing Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991)).

For a finding of spoliation, a party must show that "(1) the party with control over the evidence had an obligation to preserve it at the time of destruction; (2) the evidence was destroyed with a 'culpable state of mind'; and (3) the evidence was relevant to the party's claim or defense." In re Hitachi TV Optical Block Cases, 2011 U.S. Dist. LEXIS 90882, at *16 (S.D. Cal. Aug. 12, 2011) (quoting Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)); see also Kitsap Physicians Serv., 314 F.3d at 1001 (willful spoliation occurs when a party destroys evidence after being given notice that documents were potentially relevant to the litigation before they were destroyed).

Once spoliation is shown, the guilty party has the burden of demonstrating that no prejudice resulted from the spoliation. In re Hitachi, 2011 U.S. Dist. LEXIS 90882, at *18-19 (quoting Hynix Semiconductor Inc. v. Rambus, Inc., 591 F.Supp.2d 1038, 1060 (N.D. Cal. 2006) (internal citations omitted) (overturned on other grounds)). "Prejudice is determined by looking at whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial, threatened to interfere with the rightful decision of the case, or forced the non-spoiling party to rely on incomplete and spotty evidence." Id. (citing Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006)).

A party who has engaged in spoliation of evidence may be sanctioned under the inherent power of the federal courts to sanction abusive litigation practices or under Fed. R. Civ. P. 37. See Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015). Spoliation sanctions can "include assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case dispositive sanctions of dismissal or judgment." Id. (citations omitted).

3

16CV2468 JM-LL

When considering sanctions for spoliation, "a court will seek a sanction that will: (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position it would have been in absent the wrongful destruction of evidence by the opposing party. In re Hitachi, 2011 U.S. Dist. LEXIS 90882, at *20-21 (citing AdvantaCare Health Partners, LP v. Access IV, 2004 U.S. Dist. LEXIS 16835, at *12-13 (N.D. Cal. Aug. 17, 2004)). Courts should also consider "the degree of fault of the party who destroyed the evidence and whether a lesser sanction exists that would avoid substantial unfairness to the opposing party." Id. (citing Brosnan v. Tradeline Solutions, Inc., 681 F.Supp.3d 1094, 1104 (N.D. Cal. Jan. 15, 2010)).

An adverse inference jury instruction based on the spoliation of evidence requires a showing that: "(1) the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed with a culpable state of mind; and (3) the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Sherwin-Williams Co. v. JB Collision Servs., Inc., 2015 U.S. Dist. LEXIS 87439, at *6 (S.D. Cal. July 3, 2015) (quoting Reinsdorf v. Sketchers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013)).

The requisite culpable state of mind for purposes of spoliation and adverse inference instructions does not require bad faith. Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 998 (N.D. Cal. 2012). A party's "conscious disregard" of its obligations is sufficient to show a culpable state of mind. Id. (citing Hamilton v. Signature Flight Support Corp., 2005 U.S. Dist. LEXIS 40088, at *13-15 (N.D. Cal. Dec. 20, 2005)). The required culpable state of mind may be demonstrated by ordinary negligence. See Reinsdorf, 296 F.R.D. at 627-28 (citing Zubulake IV, 220 F.R.D. at 220 and Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002) (the negligent destruction of evidence may be

sanctioned because "each party should bear the risk of its own negligence."))[3]; see also Miranda v. Wyatt, 677 F. App'x 432, 432-33 (9th Cir. 2017) (noting that the "parties agree that Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99 (2d Cir. 2002), provides an appropriate test for determining when an adverse inference instruction can be given").

However, "when the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction." Reinsdorf, 296 F.R.D. at 628 (quoting Pension Committee of Univ. of Montreal Pension Plan v. Banc of America Securities, 685 F. Supp. 2d 456, 470 (S.D.N.Y. 2010), abrogated on other grounds by Chin v. Port Auth. Of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012)); see also Zubulake IV, 220 F.R.D. at 220; Cottle-Banks, 2013 U.S. Dist. LEXIS 72070, at *42-44 (negligent destruction of documents did not warrant adverse inference instruction or evidence preclusion where non-spoliating party failed to show relevance and thus was not prejudiced). "The purpose of an adverse inference is not to impose any moral blame

---

[3] Many courts in this Circuit have adopted the reasoning of the Zubulake IV and Residential Funding Corp. courts and have similarly instructed that "[t]he 'culpable state of mind' includes negligence." Reinsdorf, 296 F.R.D. at 627–28 (quoting Lewis v. Ryan, 261 F.R.D. 513, 521 (S.D. Cal. 2009) (citing FTC v. Lights of America Inc., 2012 U.S. Dist. LEXIS 17212, at *5 (C.D. Cal. Jan. 20, 2012); Housing Rights Center v. Sterling, 2005 U.S. Dist. LEXIS 44769, at *23-24 (C.D. Cal. Mar. 2, 2005); Cottle-Banks v. Cox Commc'ns, Inc., 2013 U.S. Dist. LEXIS 72070, at *42-44 (S.D. Cal. May 21, 2013); Uribe v. McKesson, 2010 U.S. Dist. LEXIS 115311, at *8 (E.D. Cal. Oct. 21, 2010); Infor Global Solutions (Michigan), Inc. v. St. Paul Fire and Marine Ins. Co., 2009 U.S. Dist. LEXIS 125797, at *8-9 (N.D. Cal. Oct. 21, 2009)).

As the court in Residential Funding Corp. explained:

> It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss.

Id. at 108 (quoting Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 75 (S.D. N.Y. 1991)).

5

16CV2468 JM-LL

but to restore evidentiary balance and the risk should fall on the party responsible for the loss." Victorino v. FCA US LLC, 2017 U.S. Dist. LEXIS 168390, at *31 (S.D. Cal. Oct. 11, 2017).

## SUMMARY OF PARTIES' ARGUMENTS

The instant action arises from the March 31, 2016 allision of Plaintiffs' whale-watching excursion vessel, the M/V ADVENTURE HORNBLOWER ("Vessel"), with the seawall at the Navy Pier in San Diego. ECF No. 1.

In the present Motion, the Helvie Claimants seek evidentiary sanctions for Plaintiffs' failure to preserve oil and transmission parts from the Vessel after the allision occurred. Mot. at 4-5. The Helvie Claimants argue that: (1) Plaintiffs "knew, or reasonably should have known, that the transmission parts were going to be very important to inevitable litigation brought by injured passengers in this matter"; (2) Plaintiffs "did not take steps to make sure this evidence was not lost and failed to even discuss the importance of this evidence with caretakers such as ZF [the third party company that performed the overhaul]"; and (3) the Helvie Claimants' "ability to prove its claim, that lack of maintenance and/or repairs on the transmission was a cause of the [allision], is severely compromised, as Helvie's expert witnesses cannot examine these lost parts firsthand and provide testimony thereto." Mot. at 14-15.

In their Opposition, Plaintiffs do not dispute that on June 2016, Plaintiffs "overhauled both the port and starboard transmissions on the Vessel, which involved the replacement of some internal transmission parts." Opp. at 7. Plaintiffs further concede that "[a]ccording to the Plaintiff's Director of Marine Services, Javier Lewells, the removed parts were placed in a crate, but he did not direct anyone to save or dispose of the crate and he does not know what was done with it." Id. Plaintiffs also do not dispute that after the demand was made to inspect the replaced transmission parts, Plaintiffs "have been unable to locate the crate or to determine what happened to it or its contents." Id. at 8.

Instead, Plaintiffs argue that by early June 2016, it was aware that "third-party investigators had found both that the Vessel's transmission was functioning properly and

6

16CV2468 JM-LL

that the actuator/servo motor that was supposed to shift the transmission had repeatedly failed when tested." Id. at 12.

Plaintiffs assert there is no evidence that Mr. Lewells or any other employee "made a conscious decision to discard the transmission parts or oil in order to hide them from litigants." Id. at 19. In support, Plaintiff notes that: (1) "there were multiple witnesses to the overhaul of the transmissions"; and (2) there is a "paper trail" of this overhaul. Id. at 20. Accordingly, Plaintiffs argue that they could not "possibly planned that, by disposing of the old transmission parts and oil, no one would discover that they ever existed and, therefore, they would intentionally throw them away to conceal them." Id.

Plaintiffs further argue that there is "abundant evidence" that the "gear selector on the transmission was tested repeatedly following the Incident" and "found to move freely and easily[.]" Id. Finally, Plaintiffs argue that the Helvie Claimants are not prejudiced because the theory the Helvie Claimants will present at trial "does not depend upon the condition of any of the transmission parts that were replaced or the oil[.]" Id. at 21.

## I. **Timeliness**

As an initial matter, Plaintiffs contend the Court should deny the Helvie Claimant's Motion for Sanctions as untimely. Plaintiffs argue that the "items at issue were requested by the Claimants in written discovery requests to which the Plaintiffs responded on March 21, 2018." Id. at 22. Plaintiffs note that their responses "unambiguously made clear" that the "only oil samples taken were in the hands of the Coast Guard" and the replaced parts were not in Plaintiffs' "custody, care or control." Id.

The Helvie Claimants respond that the Motion is not untimely because the "extent" to which Plaintiffs damaged their case "is only now becoming fully apparent." Reply at 9. Specifically, the Helvie Claimants argue that during the depositions of their expert witnesses, their experts "stated that the 'lost' evidence is significant and would have affected their expert reports." Id. at 9. As such, the Helvie Claimants argue it has "only recently become clear that a drastic motion, such as a present motion, is necessary[.]" Id. Accordingly, the Helvie Claimants argue that the triggering deadline to file a discovery

7

motion was actually the date of the "depositions of their expert witnesses which have occurred within the past two weeks." Id. at 10.

An unreasonable delay can render a spoliation motion untimely. See Cottle-Banks, 2013 U.S. Dist. LEXIS 72070, at *45; Goodman v. Praxair Services, Inc., 632 F. Supp. 2d 494, 506-08 (D. Md. 2009) (noting a particular need for spoliation motions to be filed "as soon as reasonably possible after discovery of the facts that underlie the motion.").

At the time the dispute arose, Judge Adler's Chamber Rules required discovery disputes to be submitted "within 45 days of the date upon which the event given rise to the dispute occurred" and that "[f]or written discovery, the event given rise to the discovery dispute is the service of the response." Magistrate Judge Adler's Civil Chamber Rules, Case Management and Discovery Disputes, Rule C.

From the Parties' respective briefs, it is undisputed the Helvie Claimants requested the missing items at issue in written discovery requests. See Mot. at 6; Opp. at 22. It is further undisputed that on March 21, 2018, Plaintiffs responded to these requests, indicating that the missing oil samples were in the custody of the Coast Guard and the replaced transmission parts were no longer in Plaintiffs' "custody, care or control." See Mot., Ex. D; Opp. at 22.

The Helvie Claimants did not file the instant Motion until November 6, 2018—over seven months after receiving Plaintiffs' discovery responses. The Court finds the Helvie Claimants' explanation for their delay unconvincing. Notwithstanding this, the Court will consider the Motion given the procedural posture of the case. See Sherwin-Williams Co., 2015 U.S. Dist. LEXIS 87439, at *4-5 (declining to deny a spoliation motion as untimely even when delay was not fully justified because the motion was brought before dispositive motions were filed).

II. **Spoliation**

    A.    Plaintiffs' Obligation To Preserve

In their Motion, the Helvie Claimants argue that "clearly" by the time the Vessel's teardown occurred, Plaintiffs' "duty to preserve the parts had arisen." Mot. at 14.

Specifically, the Helvie Claimants assert that it is "axiomatic that worn out and malfunctioning transmission parts being used in a vessel could be relevant in a litigation concerning a crash due to the vessel being unable to shift gears" and that therefore Plaintiffs "knew, or reasonably should have known, that the transmission parts were going to be very important to inevitable litigation brought by injured passengers in this matter." Id.

In their Opposition, Plaintiffs argue it is "highly questionable" whether they should have "even reasonably anticipated that the parts would later be called 'evidence' in this case" citing to the "sequence of events" laid out in their Opposition. Opp. at 20.

The duty to preserve documents attaches "when a party should have known that the evidence may be relevant to future litigation." In re Napster, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006) (quoting Zubulake, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). The future litigation must be "probable," which has been held to mean "more than a possibility." Id. (quoting Hynix, 591 F. Supp. 2d at 1061).

Plaintiffs filed this action on September 30, 2016, after the teardown occurred. ECF No. 1. The Court must therefore determine whether Plaintiffs should have known the replaced transmission parts would be relevant to future litigation at the time of the overhaul. In this case, whether the future litigation was "probable" must be viewed from the perspective of Plaintiffs, who were in control of when the litigation was to commence. Hynix, 591 F. Supp. 2d at 1061.

Here, Plaintiffs should have reasonably known by June 2016 that the transmission parts being replaced would be relevant to future litigation. Plaintiffs' suit for exoneration and limitation of liability relies on a theory that "third-party investigators" found that the Vessel's transmission was functioning properly and "that the actuator/servo motor that was supposed to shift the transmission had repeatedly failed when tested." Opp. at 12.

Yet Plaintiffs also explicitly concede that: (1) "for several years before the Incident, they did not follow the transmission manufacturer's recommended service and maintenance schedule for the Vessel's transmissions"; and (2) "the port side transmission on the Vessel had an oil leak for several months prior to the Incident." Id. at 8. Given

these concessions, Plaintiffs should have reasonably known the transmission parts and replaced oil could serve as relevant evidence in a future litigation regarding the cause of the allision.

Plaintiffs further argue the transmission parts were overhauled only "after the on-site investigations of the Coast Guard and NTSB had concluded" and that "[t]he Coast Guard attended the overhaul but did not take custody of any of the transmission parts, nor did it direct the Plaintiffs to retain any of the parts." Opp. at 7.

The Court does not find Plaintiffs' arguments persuasive. Notwithstanding the fact that it was Plaintiffs' duty to preserve these parts, it is not clear to the Court that: (1) the Coast Guard and NTSB's investigations into the Vessel's transmission were complete at the time of the overhaul; or (2) that the Coast Guard did not request that the parts be retained.

In his deposition, Mr. Lewells, Plaintiff's former Director of Marine Services, testified that when the Coast Guard released the transmission parts back to ZF Marine (the manufacturer of the Vessel's transmission), the Coast Guard instructed ZF Marine to preserve these parts:

> Q When they released it, who did they tell or who did they notify that the parts were released?
> A The Coast Guard did.
> Q Who did they notify? Did they notify you?
> A No. They notified ZF technicians.
> Q How do you know that?
> A Because I heard when the Coast Guard told them to save every single part that they took out of the transmissions.
> Q So you heard the Coast Guard tell them to save all of that?
> A Yes.

Mot, Ex. A, at 82:1-12.

Similarly, the NTSB's report pertaining to the allision did not issue until August 25, 2017, over a year after Plaintiffs performed their overhaul. Reply, Ex. A at 13. It is clear that the Vessel's transmission was central to the NTSB's investigation. Specifically, in the

NTSB's Accident Brief, it concluded that the probable cause of the allision was partly "a failure of the port transmission to disengage from the forward propulsion position due to the operating company's lack of adherence to the transmission manufacturer's recommended periodic maintenance schedule and the lack of routine maintenance[.]" Id. at 12.

For these reasons, the Court finds that the first element of spoliation, that Plaintiffs had a duty to preserve, is satisfied.

B.  Plaintiffs' State Of Mind

In their Motion, the Helvie Claimants broadly allege Plaintiffs' failure to preserve was "willful" as the "convenient loss of significant evidence implies intentional, bad faith maneuvering designed to cripple the development" their claims. Mot. at 15. The Helvie Claimants argue that the Plaintiffs' actions are also willful "in light as to how Hornblower stands to profit from its intentional loss of the transmission parts regarding the issues in the greater case." Reply at 7.

In their Opposition, Plaintiffs argue again that it is "highly questionable" whether they should have "even reasonably anticipated that the parts would later be called 'evidence' in this case" citing to the "sequence of events" laid out in their Opposition. Opp. at 20. Based on these events, Plaintiffs argue that "[a]t most" the "loss/disposal of the parts was negligent." Id.

The Helvie Claimants' suspicions notwithstanding, there is no indication that Plaintiffs' failure to retain these parts was in bad faith. Plaintiffs have set forth evidence that their failure to preserve the transmission parts was based on: (1) their conclusion from third-party investigations that the transmission was not the cause of the allision at the time of the overhaul; and (2) the Coast Guard's lack of direction to save these parts after the teardown. Opp. at 7, 12.

While this explanation does not completely alleviate Plaintiffs of their obligation to preserve the missing parts, it does indicate Plaintiffs' loss was not meant to intentionally prejudice the Helvie Claimants. See Victorino, 2017 U.S. Dist. LEXIS 168390, at *22-23

(Plaintiff did not act willfully by failing to preserve vehicle parts when it was not specifically directed to do so); Sherwin-Williams, 2015 U.S. Dist. LEXIS 87439, at *9 (S.D. Cal. July 3, 2015) (finding evidence was not deliberately destroyed when explanation was provided for its destruction).

The Court does, however, find that Plaintiffs acted negligently in failure to preserve the replaced parts. "The 'culpable state of mind' includes negligence." See Sherwin-Williams Co., 2015 U.S. Dist. LEXIS 87439, at *10 (party acted negligently when it failed to take minimum precautions to preserve relevant evidence). Despite their duty to preserve evidence, Plaintiffs did not even take the minimum precautions necessary to preserve the replaced transmission parts and oil—such as by providing clear directions to ZF Marine or to its own employees to do so. See Opp. at 7.

Indeed, Plaintiffs note in their Opposition that: "[a]ccording to the Plaintiff's Director of Marine Services, Javier Lewells, the removed parts were placed in a crate, but he did not direct anyone to save or dispose of the crate and he does not know what was done with it." Id.

Mr. Lewells further testified in deposition that he did not recall whether the crate with the missing parts was even labeled in anyway:

```
Q Did you ever see if the box was labeled by ZF in any way?
A I don't recall.
Q Did it have any marks on the outside that said ZF or Hornblower?
A I don't recall seeing anything, no.
```

Mot., Ex. A at 88:11-16.

For these reasons, the Court finds that the second element of spoliation is satisfied.

C. Relevance Of The Missing Transmission Parts/Prejudice to the Helvie Claimants

Because the Court finds that the loss of the transmission parts was done with a negligent state of mind, the burden shifts to the Helvie Claimants to demonstrate relevance

12
16CV2468 JM-LL

and prejudice. See Cottle-Banks, 2013 U.S. Dist. LEXIS 72070, at *42-43; Reinsdorf, 296 F.R.D. at 627 ("[W]hen the destruction is negligent, relevance must be proven by the party seeking the sanctions.").

In their Motion, the Helvie Claimants argue that the loss of the parts have prevented "Claimants from investigating the transmission at issue to address Hornblower's 'no harm' theory[.]" Reply at 4. Specifically, the Helvie Claimants note that while Plaintiffs' "agents and their expert witnesses" have had "ample opportunity to examine the transmission parts before conveniently losing them", the Helvie Claimants and their expert witnesses have been "afforded no such opportunity" and are therefore "working with a fundamental informational disadvantage[.]" Mot. at 16.

In their Opposition, Plaintiffs argue the Helvie Claimants are not prejudiced because: (1) the theory the Helvie Claimants will present at trial "does not depend upon the condition of any of the transmission parts that were replaced or the oil"; and (2) there is "abundant evidence" that the "gear selector lever on the transmission was tested repeatedly following the Incident" and "was found to move freely and easily." Opp. at 21.

Plaintiffs also reference (and attach) in their Opposition several alternate sources of evidence concerning how the Vessel's transmission operated before the overhaul, including: (1) a photograph taken by the Coast Guard of the gear selector lever on the port transmission's control box; (2) a report from an authorized dealer for Twin Disc confirming that "he was able to move the shift lever on each transmission with minimal pressure and no binding"; and (3) a report from a ZF Marine technician concluding that the gear selector level on the transmission "revealed normal function and response to movement" and that it moved "smoothly and without hesitation." Opp. at 9-10, Exs. 2-4. Plaintiff further notes that "the gear selector level and the transmission control box to which it is connected, remains in place on the Vessel to this day" and that "Claimants and their experts were given an opportunity to inspect these items." Id. at 21.

The prejudice inquiry "looks to whether the spoliating party's actions impaired the affected party's ability to go to trial or threatened to interfere with the rightful decision of the case." Victorino, 2017 U.S. Dist. LEXIS 168390, at *24 (citations omitted).

Here, the Helvie Claimants are prejudiced by the inability to inspect the replaced transmission parts. The prejudice is significant to the Helvie Claimants' theory that the allision was caused by issues in the Vessel's transmission. The inability to inspect the replaced parts is especially significant in light of Plaintiff's explicit concessions: (1) regarding failures to follow the recommended service and maintenance schedule for the Vessel's transmissions and (2) that the port side transmission had an oil leak for several months prior to the allision. See Opp. at 8.

Although Plaintiffs note the existence of alternate sources of evidence, this does completely not cure the prejudice suffered by the Helvie Claimants. See Victorino, 2017 U.S. Dist. LEXIS 168390, at *24-27 (party was prejudiced even when it had been given an opportunity to visually inspect a part before it was replaced).

For these reasons, the Court finds that the third element of spoliation is satisfied.

D. Sanctions

As set forth herein, the Court finds that that the Helvie Claimants have demonstrated the three factors to support spoliation and an adverse inference instruction. The Court next considers what type of adverse inference instruction should be imposed.

Adverse inference jury instructions come in "varying degrees of harshness depending on the nature of the spoliation where 'the more egregious the conduct, the more harsh the instruction.'" Victorino, 2017 U.S. Dist. LEXIS 168390, at *32 (citations omitted).

> In its most harsh form, when a spoliating party has acted willfully or in bad faith, the jury can be instructed that certain facts are deemed admitted and must be accepted as true. At the next level, when a spoliating party has acted willfully or recklessly, a court may impose a mandatory presumption. Even a mandatory presumption, however, is considered to be rebuttable. The least harsh instruction *permits* (but does not require) a jury to *presume* that the lost

14

16CV2468 JM-LL

evidence is both relevant and favorable to the innocent party. If it makes this presumption, the spoliating party's rebuttal evidence must then be considered by the jury, which must then decide whether to draw an adverse inference against the spoliating party.

Id. (citations omitted).

The Helvie Claimants' request the Court impose an evidentiary sanction:

[F]orbidding Hornblower from introducing evidence or testimony at trial that suggests or indicates in any way that the transmission, its parts, oil, and/or appurtenances were in good or adequate condition; did not have indications of use, wear, tear, damage or other abnormalities; and that any evidence or testimony indicating or designed or developed to suggest the spoliated evidence was not a cause of, nor provide evidence contrary to the assertion that the transmission, its parts, oil, etc. was a cause of this incident be excluded and that this Court grant any and all relief to which Helvie may be justly entitled.

Mot. at 19.

Plaintiffs respond that if spoliation is found, "at worst, the Plaintiffs should be allowed to present evidence to overcome a rebuttable presumption that the tangible objects that are the subject of this Motion would be harmful to the Plaintiffs' case, if they were available." Opp. at 5.

Here, as discussed above, the Court does not find that Plaintiffs acted in bad faith. Based on this record, the Court finds that the sanction requested by the Helvie Claimants is not warranted.

This case is similar to the Court's decision in Victorino v. FCA US LLC, 2017 U.S. Dist. LEXIS 168390 (S.D. Cal. October 11, 2017). In that case, plaintiff failed to request that a third-party mechanic retain relevant parts in plaintiff's vehicle after they were replaced. Id. at *7-9. The Court found that plaintiff's conduct was at most negligent and imposed a mandatory presumption. Id. at *32-33. The Court found that such a mandatory presumption: "addresses the purpose of the spoliation sanction to deter future spoliation of evidence, places the risk on [Plaintiff] for his failure to retain the relevant clutch component

parts that are dispositive to determining liability in the case, and attempts to restore [Defendant] to the same position it would have been in if the clutch parts had not been disposed." Id. at *33; see also Blumenthal Distrib., Inc. v. Herman Miller, Inc., 2016 U.S. Dist. LEXIS 184932, at *75-76 (C.D. Cal. July 12, 2016) (recommending mandatory presumption instruction where spoliating party was negligent in failing to preserve electronic records).

For these reasons, the Court orders that a mandatory presumption instruction be similarly imposed in this case. The Court finds that the exact wording of the instruction is more appropriately determined at trial.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** the Helvie Claimants' Motion for Sanctions for Spoliation of Tangible Physical Evidence.

Specifically, the Court **GRANTS** the Helvie Claimants' motion for sanctions as to the Helvie Claimants in the form of an evidentiary sanction. The Court **DENIES** the Helvie Claimants' request for sanctions in the form of an adverse inference instruction prohibiting Plaintiffs from introducing evidence that the Vessel's transmission was not the cause of the allision, but **GRANTS** the request for sanctions in the form of a mandatory presumption instruction.

**IT IS SO ORDERED.**

Dated: December 11, 2018

_____
Honorable Linda Lopez
United States Magistrate Judge