# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the matter of the Complaint of HORNBLOWER FLEET, LLC owner, and HORNBLOWER YACHTS, LLC dba HORNBLOWER CRUISES AND EVENTS, owner pro hac vice for exoneration of, or limitation of, liability,<br><br>Plaintiffs,<br><br>v.<br><br>and Related Claims. | Case No.: 16cv2468 JM(LL)<br><br>**ORDER ON: (1) MOTION FOR LEAVE TO FILE A CLAIM IN THE LIMITATION OF LIABILITY; (2) MOTION TO DISMISS FOR LACK FOR LACK OF PROSECUTION PUTATIVE CLAIMS OF MR. OYER; AND (3) MOTION TO STAY LIMITATION ACTION AND LIFT INJUNCTION AND STAY ON OTHER PROCEEDINGS** |

Presently before the court is claimant Susan Pendergast's Motion to Stay the Limitation of Liability Action and Lift the Injunction and Stay of Other Proceedings, (Doc. No. 244), claimant Lauren Preski's Motion Requesting Leave of Court to File a Claim in the Limitation of Liability, (Doc. No. 260), and Hornblower's Motion to Dismiss for Lack of Prosecution the Putative Claims of Darrell Oyer, Colleen Findlay, Conner Findlay, and Ian Findlay, (Doc. No. 262). A hearing on the motions was held on June 13, 2019.

/ / /

/ / /

## I. Background

On March 31, 2016, an allision occurred between the vessel *M/V Adventure Hornblower* and a pier in San Diego, California.

On September 30, 2016, Plaintiffs Hornblower Fleet, LLC, and Hornblower Yachts, LLC dba Hornblower Cruises and Events (collectively "Hornblower") filed this Limitation of Liability Act ("LOLA") complaint. (Doc. No. 1). Hornblower filed the complaint claiming any alleged losses, damages and injuries sustained as a result of the voyage of the *Adventure* was not the result of any negligence on Hornblower's part, or the result of any unseaworthiness of the vessel, and that any such negligence or unseaworthiness was without the knowledge or privity of Hornblower. (*Id.*)

Concurrent with the complaint, Plaintiffs filed an Application for Issuance of Monition and Injunction of Any Further Action or Claim, (Doc. No. 2) and an *Ad Interim* Stipulation of Value, (Doc. No. 3). The stipulation informs the value of the vessel and its appurtenances does not exceed $4,270,549.20. *Id.* at 1.

On December 13, 2016, upon application, the court entered an order directing Issuance of Monition and Injunction and approving the *Ad Interim* Stipulation for Value. (Doc. No. 7.) In accordance with the order, a notice issued informing people to file any respective claims arising from the voyage of the *M/V Adventure Hornblower* on March 31, 2016 with the Clerk of Court for the U.S. District Court, Southern District of California on or before January 23, 2017. (Doc. No. 8.) Plaintiffs provided publication notice, as well as direct mail service to potential claimants. (Doc. No. 47.) The notice was published in San Diego on December 20, 2016, December 27, 2016, January 3, 2017 and January 10, 2017. (Doc. No. 47.)

///
///
///
///
///

All told 12 people filed claims in response to the LOLA action before the court entered default as to all persons not appearing in this action on April 13, 2017.[1] [2] (Doc. No. 52.) After being granted leave to do so, Dana McCoy, filed an Answer and Claim on July 21, 2017. (Doc. Nos. 102, 103, 103-1, 103-2.)

On October 23, 2017, Hornblower was required to post an appropriate bond with the Clerk of Court in the amount of $4,270,549.20 interest at six percent per annum from the date of commencement of this action. (Doc. No. 129.)

The LOLA action progressed over the next year and a half and at a hearing on March 11, 2019, the court set a trial date of April 29, 2019. (Doc. No. 229.) The court was proceeding to trial based on the parties' representation that the only remaining claimants left in the LOLA action were Ana Helvie, Kyle Helvie and Pendergast. On April 22, 2019, one week before the trial was set to begin, the Helvies and Hornblower reached a settlement.[3] When claimant Pendergast discovered the Helvies' settlement she filed her motion to stay the LOLA action, vacate the trial date and lift the stay injunction and stay

---

[1] Claimant Dennis Fitzpatrick filed an Answer and Claim on January 19, 2017. (Doc. No. 9.) Claimants Ana Helvie and Kyle Helvie filed an Answer and Counterclaim on January 19, 2017. (Doc. No. 10). Claimant Susan Pendergast filed her Claim and Response to Complaint for Exoneration from, or Limitation of, Liability on January 23, 2017. (Doc. No. 15.) Claimant Elyse Matthias filed her Claim and Response to Complaint for Exoneration from, or Limitation of, Liability on January 23, 2017. (Doc. No. 16.) On January 24, 2017, Darrell J. Oyer filed a Notice on behalf of himself, his wife Colleen B. Findlay and his two grandchildren. (Doc. No. 24.) Claimants Toltia Harrison, Alexandria Harrison and Morgan Harrison filed an Answer and Claims on February 6, 2017. (Doc. No. 30.)

[2] For purposes of this motion, the court is including Oyer as a claimant despite his "Notice" and the accompanying documentation containing contrary positions. *Compare* the Notice itself that states Oyer is making a claim "for damages suffered by me" and requests reimbursement for the costs of a return trip for four to San Diego, (Doc. No. 24 at 1 ¶¶ 1, 4) *with* the sentence in the letter to Ms. Mead "I am not requesting anything for myself – I was not injured," (*id.* at 5).

[3] The formal dismissal of all claims between the Helvies and Hornblower was granted by the court on May 28, 2019 and entered on the docket on May 30, 2019. (Doc. No. 266.)

in other proceedings on the basis that only a single claimant, Pendergast, remained. (Doc. No. 244.) The trial date was vacated at a status hearing held on April 25, 2019. (Doc. No. 245.)

When the court received Pendergast's motion it reviewed the docket and found that there were no entries reflecting the dismissal of Claimants Dennis Fitzpatrick, Tolita Harrison, Alexandria Harrison, Morgan Harrison, Elyse Matthias nor Dana McCoy's claims against Hornblower. The court also became aware that no action had been taken regarding the Notice of Complaint for Exoneration from, or Limitation of, Liability filed by Darrell J. Oyer on behalf of himself, his wife Colleen B. Findlay and his two grandchildren (collectively the "Oyer Group"). Following its discovery, the court issued a Request for Additional Briefing, (Doc. No. 246), which resulted in a flurry of joint dismissals being requested by all but the Oyer Group, (Doc. Nos, 248, 249, 250, 254). Orders of dismissals were duly granted by the court. (Doc. Nos., 251, 252, 253, 255.)

While the LOLA action proceeded in this court, on March 29, 2019, Preski filed a lawsuit against Hornblower in San Diego Superior Court. (Doc. No. 260-3.) Subsequently, on May 15, 2019, Preski filed a Motion Requesting Leave to File A Late Claim. (Doc. No. 206).

On May 24, 2019, Pendergast, Preski, Oyer and Colleen Findlay filed a Joint Stipulation in Support of Pendergast's Motion to Stay Limitation of Liability Act and Lift the Injunction and Stay of Other Proceedings (the "Newton Stipulation"). (Doc. No. 261.) Mr. Oyer and Ms. Findlay also joined the stipulation on behalf of their minor grandchildren but are unable enter a stipulation on their behalf. *See Johns v. County of San Diego,* 114 F.3d 874, 976 (9th Cir. 1997) (the right of minors to competent counsel is so compelling that the Ninth Circuit has joined other circuits in holding that a "guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer.").

On May 24, 2019, Hornblower filed its Motion to Dismiss the claims of Darrell Oyer, Colleen Findlay, Conner Findlay and Ian Findlay. (Doc. No. 262.)

A hearing on the motions was held on June 13, 2019. Mr. Tribolet and Mr. Wootton appeared on behalf Hornblower, Mr. Pendergast and Mr. Clowney appeared on behalf of Pendergast, with Ms. Albence appearing on behalf of Preski. Mr. Oyer was afforded the opportunity to appear telephonically. During the hearing the court provided Mr. Oyer with an update regarding the status of this litigation and advised him of the need to seek legal representation so that the Oyer Group's continued participation in this matter could be determined as soon as possible.[4]

## II. Preski's Motion for Leave to File a Claim

On May 15, 2019, Preski filed her Motion Requesting Leave of Court to File a Claim in the Limitation of Liability, (Doc. No. 260), and Hornblower duly filed its opposition. (Doc. No. 271.) Hornblower opposes Preski joining this litigation, noting the barebones nature of the application, the lack of facts presented and asserts that allowing her to join at this late stage would require the re-opening of discovery and further delay trial. (*See generally* Doc. No. 271.)

Federal Rules of Civil Procedure Supplemental Admiralty and Maritime Claims Rule F sets forth the procedure for bringing a limitation action. Pursuant to the rule, "the court shall issue a notice to all persons asserting claims with respect to which the complaint seeks limitation, admonishing them to file their respective claims with the clerk of the court and to serve on the attorneys for the plaintiff a copy thereof on or before a date to be named in the notice." Fed. R. Civ. P. Supp. Adm. R. F(4). The rule also provides that "[f]or cause shown, the court may enlarge the time within which claims may be filed." Fed. R. Civ. P. F(4). Thus, the "granting or withholding of permission to file claims after the expiration of the monition period is discretionary with the trial court." *Golden Gate Bridge, Highway & Transp. v. Golden Gate Bridge, Highway & Transp. Dist.,* Case No 13-cv-05875-JST, 2014 WL 6706827, at *2 (N.D. Cal. Nov. 24, 2014) (quoting *Meyer v. New England Fish*

---

[4] The issue regarding the Oyer Group's claim has been more fully addressed in the court's Order to Show Cause that was issued on June 18, 2019. *See* Doc. No. 273.

5

16cv2468 JM(LL)

*Co. of Oregon,* 136 F.2d 315, 316 (9th Cir. 1943)). Further, as the Fifth Circuit case *Texas Gulf Sulphur Co. v. Blue Stack Towing Co.,* 313 F.2d 359, 362 (5th Cir. 1963), relied on by many courts that have considered late filed claims states:

> Admiralty is administered with equitable liberality…Consequently, we readily accept the guiding principle elucidated by Benedict that 'so long as the limitation proceeding is pending and undetermined, and the rights of the parties are not adversely affected, the court will freely grant permission to filed late claims \*\*\*' upon a showing of the reasons therefor.

*Id.,* 313 F.2d at 362. (quoting 3 BENEDICT, Admiralty 518, p. 542 (Knauth ed. 1940)).

"In determining whether to permit late claims, it is important to consider '(1) whether the proceeding is pending and undetermined, (2) whether granting the motion will adversely affect the rights of the parties, and (3) the claimant's reasons for filing late.'" *Matter of Deng,* No. C 13-02659 WHA, 2014 WL 1347380, at \*8 (N.D. Cal. Apr. 3, 2014) (quoting *Golnoy Barge Co. v. M/T SHINOUSSA¸*980 F.2d 349, 351 (5th Cir. 1993)).

Preski, an employee of Hornblower, was working onboard the *M/V Adventure Hornblower* on March 31, 2016, the day the vessel collided with the San Diego Pier. (Doc. No. 260-1 at 4; Doc. No. 260-2, Preski Decl. at ¶2.) The gravamen of Preski's motion centers around the fact that Hornblower did not contact her directly. The declaration filed in support of the motion states that Preski was never contacted by Hornblower regarding the collision, was unaware of the need to file a claim by January 23, 2017 and was never notified that there was a pending proceeding in any court related to the *Adventure* collision. (Preski Decl. at ¶¶ 2-8.)

However, Preski has not provided the court with any authority that Hornblower was under any duty to provide actual notice to every possible claimant, or employee on-board the vessel on the day of allision, and the court is not persuaded that it was under an obligation to do so. Supplemental Admiralty Rule F(4) provides that "[t]he notice shall be published in such newspaper or newspapers as the court may direct once a week for four successive weeks prior to the date fixed for the filing of claims." Fed. R. Civ. P. Supp. Adm. R. F(4). By the second publication, Plaintiff is also required to mail a copy of the

notice "to every person known to have made any claim against the vessel arising out of the voyage or trip on which the claims sought to be limited arose." *Id.* A careful reading of the rule makes it clear that actual notice is not required for "possible claimants," rather the vessel owner is only required to mail the notice to "known" claimants. *See, e.g., In re Orion Dredging Servs., LLC*, No. 3:09-cv-358-J-25HTS, 2010 WL 497716, at *1 (Feb. 8, 2010, M.D. Fla.) (the court denied a request to file a late claim by a seaman working on the vessel that sunk, explaining that "actual notice is not required for "possible claimants; instead the petitioner/plaintiff is only required to mail the notice to "known claimants, whereas it is sufficient to provide potential claimants with constructive notice by publication."); *In re River City Towing Servs., Inc.,* 420 F.3d 385, 388 (5th Cir. 2005) (explaining that "although plaintiffs argued to the district court that published notice 'was meaningless and ineffective and mere window dressing,' they failed to provide evidence, through an affidavit, that the potential claimants involved had actually failed to receive notice."). Hornblower published this court's monition notice on December 20, 2016, December 27, 2016, January 3, 2017 and January 10, 2017 in The Daily Transcript, a newspaper circulated in San Diego, (Doc. No. 47), in accordance with Supplement Rule F(4). There is no evidence that Preski was a known claimant, was not provided with the notice required under Supplemental Rule F(4), and nothing in the record suggests bad faith on the part of Hornblower.

In making the application, Preski has overlooked the fact that "relief from a tardy claim is not a matter of right. It depends upon an equitable showing." *Texas Gulf Sulphur,* 313 F.2d at 363. Aside from not being provided actual notice, the application itself fails to show cause why the court should permit her to file a late claim in this LOLA action. Preski waited until the last day of the three-year statute of limitation period to file her Jones Act complaint in the San Diego Superior Court. The motion provides no information why Preski delayed so long in filing a claim and scant detail regarding the type and severity of the injuries suffered. All that is provided is the statement that Preski "sustained injuries and suffered damages." (Preski Decl. at ¶ 3.) Far more information was provided by her

attorney, Ms. Albence, at the hearing than was provided in the motion. For example, Ms. Albence informed the court that Preski suffered injuries to her right shoulder, knee and back when she was slammed into the wall at the time of the allision, was required to take time off work to deal with her injuries, filed a worker's compensation claim and received physical therapy to treat her injuries.

Turning to consideration of the stage of the proceedings and whether the granting of the motion will adversely affect the rights of the parties, these factors do not necessarily weigh in favor of permitting the filing of Preski's late claim. A majority of the claimants have dismissed their individual claims, discovery has been closed for quite some time, trial is set to commence, but judgment is yet to be entered. To allow Preski to file a claim over two years after default was entered and on the eve of trial has the potential to prejudice Hornblower and the remaining claimants, delay these proceedings and add unnecessary costs associated with discovery, as well as other expert fees. However, Pendergast and Preski have filed a joint stipulation stating they will not "seek to enforce any judgment rendered in any forum outside of this limitation proceeding against Hornblower that would expose Hornblower to liability in excess of the limitation fund." (Doc. No. 261 at ¶ 4, the Newton Stipulation.) In addition, at the June 13, 2019 hearing, Pendergast did not oppose Preski joining this litigation and Ms. Albence proffered that Preski's claims are in no way as significant as those suffered by Pendergast. Thus, the Newton Stipulation saves Preski's application and allays the court's concerns that allowing Preski to join the case at such a late stage would derail this litigation.

Administering admiralty with the requisite equitable liberality, the court **GRANTS** the Request for Leave of Court to File a Claim in the Limitation of Liability. (Doc. No. 260.)

### III. Hornblower's Motion to Dismiss for Lack of Prosecution.

On May 24, 2019, Hornblower filed its Motion to Dismiss the claims of Darrell Oyer, Colleen Findlay, Conner Findlay and Ian Findlay. (Doc. No. 262.) Hornblower seeks dismissal on the grounds that since filing the Notice of Complaint for Exoneration

From, or Limitation of, Liability, (Doc. No. 24), Oyer has not substantively participated in this litigation. The motion includes proof of service that a copy of the motion was served on Oyer via first class mail. (Doc. No. 262-1 at 2.) Oyer has not filed an opposition to the motion.

In light of the issuance of the OSC to the Oyer Group for failure to prosecute, (Doc. No. 273), the court **DENIES WITHOUT PREJUDICE** Hornblower's Motion to Dismiss. (Doc. No. 262.)

### IV. Pendergast's Motion to Stay LOLA Action.

On April 24, 2019, Pendergast filed a Motion to Stay the Limitation of Liability Action and Lift the Injunction and Stay of Other Proceedings. (Doc. No. 244.) Hornblower filed an opposition, (Doc. No. 256), and Pendergast filed a reply, (Doc. No. 270).

Hornblower opposes staying this action asserting that Pendergast is not the only claimant left in this action and that the limitation fund of $4,270,549.20 may not be sufficient to cover the damages expected by all of the claimants. (Doc. No. 256 at 5-7.) Additionally, Hornblower argues that Pendergast has not gained the consent of the remaining claimants.[5] (*Id.* at 7-8.) Finally, Hornblower asks the court to add additional stipulations if it does grant Pendergast's motion. (*Id.* at 8-10.)

LOLA "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 446 (2001); 48 U.S.C. § 30505. To begin such an action requires a "vessel owner first file[] a complaint in the district court, and then deposit[] an amount with the court that is the equivalent of its interest in the vessel." *In re Complaint of Ross Island Sand & Gravel,* 226 F.3d 1015, 1017 (9th Cir. 2000) (citing Fed. R. Civ. P. Supp. Adm. R. F(1)). "The district court then notices all potential claimants and requires them to file claims with the court within a specified

---

[5] This argument is now moot in light of the filing of the Newton Stipulation. (Doc. No. 261.)

9

16cv2468 JM(LL)

time and issues an injunction against any other actions against the owner if they involve related claims." *Id. (*citing Fed. R. Civ. P. Supp. Adm. R. F(3) & (4)).

As a general rule, a district court "has broad discretion in deciding whether to dissolve an injunction under the Limitation of Liability Act." *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir. 1983). "Where, however, a single claim is involved or where multiple claims do not exceed the limitation fund, 'the court's discretion is narrowly circumscribed' and the injunction must be dissolved "unless the owner can demonstrate that his right to limit liability will be prejudiced." *Id.* If there are multiple claims but the limitation fund exceeds the value of all claims, the district court must permit claimants to pursue their separate claims. *Id.* at 962. *See also Lewis,* 531 U.S. at 451, ("the Courts of Appeals have generally permitted claimants to proceed with their claims in state court where there is only a single claimant, as in *Langnes*, or where the total claims do not exceed the value of the limitation fund, as in *Lake Tankers*.").

In order to ensure a vessel owner's right to seek limitation of liability is protected, a claimant/s must (1) stipulate that the value of the limitation fund equals the combined value of the vessel and its cargo; (2) waive the right to claim res judicata based on any judgment rendered against the vessel owner outside of the limitation proceedings; and (3) concede the district court's exclusive jurisdiction to determine limitation of liability issues. *Newton,* 718 F.2d at 962. *See also Lewis,* 531 U.S. at 446 (state courts may adjudicate claims "against vessel owners so long as the vessel owner's right to seek limitation of liability is protected.")

When Pendergast originally filed her motion on April 24, 2019, she was under the impression that she was the only claimant remaining in this action. (Doc. No. 244.) Along with her motion, Pendergast submitted a stipulation that complies with the requirements set forth in *Newton*. (*See generally* Doc. No. 244-2.) But Pendergast was not, and is not, the only remaining claimant. Currently, all the remaining claimants except the Oyer Group

have filed formal dismissal papers with the court, the result being that with the addition of the late filing Preski, there are currently six claimants in this lawsuit.[6]

On May 24, 2019, Pendergast and Preski entered into the Newton Stipulation, which also comports with the requirement set forth in *Newton*. (*Compare* Doc. No. 244-2 *with* Doc. No. 261.) Although Oyer and Ms. Findlay purported to join this stipulation, as set forth above and explained in more detail in the court's order to show cause, (Doc. No. 273), they cannot enter into a stipulation on behalf of their minor grandchildren. In light of the fact that the court has afforded Oyer the opportunity to consult legal counsel, (*see* Doc. No. 273), at this point in time the court will only consider the Newton Stipulation as being jointly entered into by Preski and Pendergast.

Pendergast and Preski jointly stipulate:

(1) Hornblower have the right to litigate in this court the issue of whether they are entitled to limit its liability under the Limitation of Liability Act [], including whether the claims are subject to the Act, and this court has exclusive jurisdiction to determine limitation of liability issues.
(2) That the value of the limitation fund equals the combined value of the vessel and its pending freight and this court has exclusive jurisdiction to determine this value.
(3) No Claimant will seek a determination of the issues set forth in paragraphs (1) and (2) above in any forum outside this limitation proceeding, and all consent to waive any *res judicata* or issue preclusion effect the decisions, rulings or judgments of any other court might have on those issues; and
(4) No Claimant will seek to enforce any judgment rendered in any forum outside of this limitation proceeding against Hornblower that would expose Hornblower to liability in excess of the limitation fund, unless and until this court denies Hornblower's right to limit liability. If this court grants Hornblower's request for limitation no Claimant will seek to enforce any judgment that would require Hornblower to pay damages in excess of the limitation fund.

---

[6] Preski, Pendergast, Oyer, Ms. Colleen Findlay, Conner Findlay and Ian Findlay. The court is including the Oyer Group for purposes of this motion because the OSC for Failure to Prosecute has been issued and the deadline to respond has not yet passed.

Doc. No. 261 at 2-3.

Although this is no longer the straightforward single-claim exception Pendergast perceived it to be when the motion was originally filed, the court is persuaded that the second, adequacy of the fund, exception applies here. *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 152 (1957). ("While it is true that the claims as initially filed in the state court exceeded the fund created in the limitation proceeding, still when the admiralty court dissolved the injunction against the state suit these claims, as filed in and limited by stipulation and order of the admiralty court in the limitation proceeding, aggregated less than the fund.") Both Preski and Pendergast have provided an appropriate stipulation that adequately protects Hornblower's right to seek limitation of liability and relinquishes their rights to damages in excess of the amount of the limitation fund. *See, e.g., Lewis,* 531 U.S. at 452-454; *In re Complaint of Ross Island Sand & Gravel,* 226 F.3d at 1017-1018.

As set forth above, Preski and Pendergast have provided a stipulation that comports with the requirements of the Supreme Court and the Ninth Circuit. Hornblower has not provided the court with any authority in support of its request to add additional stipulations to those already offered, thus the court declines to add the additional stipulations requested by Hornblower. (*See* Doc. No. 256 at 9-10.)

Accordingly, Pendergast's Motion to Stay the Limitation of Liability Action and Lift the Injunction and Stay Other Proceedings is **GRANTED** on the **CONDITION** that, by ***July 16, 2019***, either of the following requirements are met: (1) the putative Oyer Group claims are dismissed or withdrawn, or (2) if the putative Oyer Group claims are not dismissed or withdrawn, they properly join the previously filed Newton stipulation, (Doc. No. 261).

V. **Conclusion**

In accordance with the above, the court hereby ORDERS as follows:

1. Motion Requesting Leave of Court to File a Claim in the Limitation of Liability is **GRANTED**, (Doc. No. 260).

2. The Motion to Dismiss for Lack of Prosecution the Putative Claims of Darrell Oyer, Colleen Findlay, Conner Findlay, and Ian Findlay is **DENIED WITHOUT PREJUDICE**, (Doc. No. 262).

3. The Motion to Stay the Limitation of Liability Action and Lift the Injunction and Stay of Other Proceedings is **CONDITIONALLY GRANTED**, (Doc. No. 244). The status of the stay will be discussed at the July 26, 2019, status hearing.

IT IS SO ORDERED.

Dated: June 21, 2019

Hon. Jeffrey T. Miller
United States District Judge